UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Staci Lundeen, Oanh Lam, Carlissa Strafford,
Tonya Olvera, Shannon Hansen, Kayla Miller,
Catrina Rugar, Jaime Rector, Jaqueline
Marstorp, Aundrea Harris & Joshua Tedesco,

      Plaintiffs,

      v.

Krucial Staffing, LLC & Brian M. Cleary V,

      Defendants.
-------------------------------------------------------X

**COMPLAINT**

JURY TRIAL DEMANDED

21-cv-

1. This is an action brought under the Emergency Paid Sick Leave Act (EPSLA, 116 P.L. 127, 134 Stat. 178), enacted as part of the Family and Medical Leave Act, 29 U.S.C. § 2901, et seq. and passed by Congress on March 27, 2020 (Section 5102).

2. Krucial Staffing, LLC ("Krucial") is a disaster-relief staffing agency formed in 2019. It had the financial "good luck" that the COVID-19 pandemic arrived soon after the LLC was registered with the State of Kansas; but it has shown to be ill-prepared to embark upon the venture of protecting the dying and managing a staff during the early pandemic. All plaintiffs worked for Krucial and all were denied quarantine pay.

1

## BACKGROUND FACTS

3.     Krucial Staffing can supply nurses to fill ICU's – and wishes to be judged on that factor alone. It has a huge chunk of the market for travel nurses. But it has shown unwillingness to protect these nurses against risk of contagion and spread. This was evident in its first deployment in New York, where it induced many nurses to "get in there" and attend to severe COVID patients without protection. It also has problems paying staff, or as required by the law. This case does not involve PPE, but Krucial's actions continue to demonstrate its lack of commitment to the entire process, in which one slip – now they are saying one second – can spread the virus.

4.     Krucial was ill-prepared to the science of the pandemic, and science is the first touchstone for which he needed to recruit, deploy and manage and pay his staff. In addition, the LLC had not contemplated nor thought through such basic issues as paperwork versus electronic record-keeping; procuring and properly storing I-9's – let alone ensuring provision of *proper* Personal Protective Equipment (PPE).

5.     Krucial thrust itself into pandemic relief, even though it could not have known the pandemic would arrive in the very last hours of 2019. At that time, its business plan was incomplete, and it knew if anything about the virus. Still, it jumped into the Wide Sargasso Sea to get the New York City contract.

6.     When it left New York and was able to procure proper PPE, still Krucial was resistant to prevent viral spread. Last summer, for example, it was under the

impression that boarding sick nurses who had symptoms of COVID onto planes was acceptable. It still does not understand that to avoid community spread in the localities where the nurses live, the nurses had to quarantine. At least under the FMLA paid quarantine for nurses on the front lines was essential to public health. Krucial had also promised it to induce nurses to come to the City, then reneged on the promise in most cases.

7. Krucial Staffing is able to recruit nurses with the promise of high pay, quarantine and other things. That would be great except that its failure to ensure, at every point, the *potential* to avoid viral spread disease harms society. This includes providing quarantine pay, especially when, not only did Krucial promise such pay, but that is required by the law. Many Krucial staffers have caught COVID because Krucial cares more about its clients' needs and its cash flow than insisting on proper PPE for its employees; enforcing social distancing; enforcing masking; or contact tracing for the nurses who contracted the virus. The thousands of workers it has hired have been a vector of spread – if a small vector, a vector just the same. Krucial's Worker's Compensation policy does not even cover a potential life-long illness. This is significant especially where COVID can cause a lifetime of complications: "brain fog," depression, anosmia, and permanent fatigue.

8. Upon information and belief, the LLC members other than Cleary are passive investors without scientific knowledge. The business plan allowed Cleary to do all

the planning. Cleary, in turn, was incapable of doing his job because he was not worried about viral spread, which includes proper quarantine – and pay. Krucial did no advocacy for the first round of employees, despite promising PPE. When PPE became available, Cleary's failures continued after it won contracts in New Orleans, Texas, Los Angeles and other places, as described below.

9. The LLC was undercapitalized and ill-equipped to handle a staff safely in the pandemic. To distract nurses and calm waters, somehow, in 2019, created hundreds of false reviews on Glassdoor, Yelp, and other ratings engines. No one could have written these for Krucial: It was created in 2019 and did no work until the New York deployment.

10. The LLC has receivables on the way and made a lot of money during the fall surge, but along the way it steals wages as illegally as many cheap New York restaurants do to the undocumented.

11. So, for example, it promised quarantine to pay for each of its workers after New York. However, when they demanded it, Krucial ghosted the requests; others who deserved it were met with a multiplicity of excuses, some contradictory. The most humorous excuse was that the State of Texas had deemed quarantine pay unnecessary, despite that Krucial's promise of such pay; despite that the employees were employed by Krucial.

12. Texas' position is hard to imagine, but even if true, Krucial was responsible for paying its employees no matter what Texas said or did. Instead, despite the numerous requests, it sent sanctimonious notices to these plaintiffs and many other nurses who worked in Texas. Joshua Tedesco, a New York resident who needed to quarantine by Governor's Cuomo's Executive Order, received a text message, ever so sanctimonious, is attached as Exhibit A.[1]

13. Krucial told other plaintiffs that the State (or County) to which the plaintiffs would not get were returning were not subject to a local quarantine order. That was not Joshua's case, but Krucial stiffed him just as well. All along, Krucial likely didn't know that Family and Medical Leave Act had been amended in March 2020 and required paid leave for plaintiffs such as these.

14. Krucial's preparedness was only to recruit nurses, almost always with false promises, but always to come to a hot spot. In so doing, it always promised

---

[1] Brian Cleary is originally from Texas and holds the state fondly in its heart. He recently recruited workers for that State but warned that anyone who had worked there within the last 30 days could not apply for an open Texas position. He said it would harm Texas in some way. There was no logic to this except to discriminate against non-Texans. Anyone who lied about working in Texas who applied would be fired. This is probably a violation of interstate commerce and discrimination against non-Texans, which probably is not actionable for these plaintiffs. But, as relevant here, plaintiffs believe the real reason Cleary withheld quarantine pay from non-Texans who came to Texas was to give Texas a gift out of his deep affection for his beloved Yellow Rose. Cleary stole from these plaintiffs (and many others) because he wanted to give a discount to Texas that these workers had to pay for: The hubris! The gall! (But it doesn't surprise.)

quarantine pay. Then it came up with every excuse it could – many contradictory – to deny nurses this pay. Some got quarantine pay, but there is no reason to explain the differential treatment except the ebb and flows of working capital. When it was short on cash, it just blamed Texas or narrowly construed its contract without knowing that the FMLA required more.

15. Krucial's short cash flow and undercapitalization contributed to this subterfuge. It has done very well in the pandemic, but only the week of this writing did Krucial hire a call center to recruit nurses. Before, Krucial's skeleton staff did the recruiting, and had little time to serve employees or enforce social distancing or provide proper PPE? Krucial was hoarding cash and did this in part by refusing money for quarantine, despite the law and its promise to make such payments. These nurses did quarantine, but the failure to pay them, in general, discouraged these plaintiffs – and many others who were stiffed –and was not in keeping with avoiding viral spread.

16. Krucial's record-keeping is execrable. Mostly, defendants rely on paper, but they lose W-9's and I-9's. FEMA is auditing Krucial's payments to workers. In the attempt to comply with FEMA's demands, for a period, Cleary suborned perjury by requiring many nurses to swear declarations that they had received all payments owed. However, since they had not, it was pure coercion employees to sign these

statements, it withheld the final check until the employee swore, she had received it. But one can't logically swear to receive pay if she had not received the pay.

17. In some cases, Krucial reneged on pay after it confirmed the pay as "approved." Staci Lundeen was "approved" for quarantine pay (see Exhibit B), then Krucial just ghosted her and didn't pay her a dime. She took her case to the press in her home state of Missouri, but Cleary had his own money to make and didn't care about the adverse publicity. At the time, Lundeen was not part of a lawsuit, and had no lawyer. Her statement to a Missouri TV station is still available here: https://tinyurl.com/y57jgdwc.

18. After starting the gravamen of its early work in New York City, Krucial went on to New Orleans, Florida, Los Angeles and places in Texas and Hawaii. Yet, it has this nagging problem that won't go away: paying its workers for quarantine, as promised, as often required by states where the nurses lived, and as required by the FMLA. Quarantine stops further spread of virus. The fact that Krucial ignores this should shock anyone's conscience. If Krucial does not pay quarantine, it reinforces retrograde, anti-masking ideas and discourages quarantine, which leads to spread.

19. If Krucial's operations during the pandemic were converted into a novel, it would surely be interesting, but Cleary would not be the hero – maybe the anti-hero, but more likely the villain. The nurses who went to work in such dangerous

conditions are the true heroes, but don't confuse the nurses' acts in risking their lives with Krucial, which is a for-profit organization that exploits its employees.

20. Each plaintiff is a nurse that lives in the United States, and each worked in the various locations mentioned above. Each was stiffed on quarantine pay, even though Krucial promised it, even though the FMLA has required it since March 2020, even though quarantine is essential to prevent the virus's spread. A pandemic relief company that spreads the virus by an unyielding refusal to pay employees: Is this what any municipality or state wants in preventing the spread of disease? It would *seem* antithetical to Krucial's mission. But it is not: Krucial's mission is to rake in as much money as possible, and to do that it fights every employee who complains about unsafe conditions, and fights quarantine pay. Preventing spread of viral infection is not part of its mission.

## PARTIES, VENUE & JURISDICTION

21. Plaintiffs Staci Lundeen, Oanh Lam, Carlissa Strafford, Tonya Olvera, Shannon Hansen, Kayla Miller, Catrina Rugar, Jaime Rector, Jackie Marstorp, Aundrea Harris and Joshua Tedesco repeat and reallege all previous paragraphs. Each worked for Krucial in different locations (mostly in Texas, and in Lam's case, twice in Texas). They reside, respectively, in Missouri (Lundeen); New York (Lam); New York (Strafford), Oklahoma (Olvera), Alaska (Hansen); Wisconsin (Miller);

Rugar (Florida); Rector (Missouri); Marstorp (California); Harris (Hawaii) & Tedesco (New York).

22. Krucial Staffing, LLC, is a Kansas-registered Limited Liability Company organized under the laws of the State of Kansas and registered to do business in the State of New York. Its headquarters are in Kansas, where Cleary resides; its members are domiciled in Kansas, Texas, South Dakota, and Nebraska.

23. Venue is proper in that defendants, registered to do business in New York are deemed to be residents of this district under 28 U.S.C. § 1391©(3) insofar as they do business here. They have even sued in this district. Arguably § 1391(b)(1) also applies as is no single "best" district in which this matter may be brought. It may be said that no party is prejudiced by having this action in this district insofar as it involves mostly questions of law. The only questions of fact are whether the plaintiffs were paid for quarantine, as required.[2]

24. Subject-matter jurisdiction is proper under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., including the COVID-19 amendments put into effect in March 2020, otherwise known as the Emergency Sick Leave Act.

---

[2] One plaintiff recently got a text message that Krucial was recruiting again for New York City. The undersigned could not confirm this, however, but the mass text was sent in the same format that Krucial routinely uses.

FACTS

25. Plaintiffs, repeating all previous allegations, worked a tour of duty for Krucial: a plurality in Texas, but also other states like Louisiana and Florida. Each was promised quarantine pay. Each had their quarantine pay stolen by Krucial Staffing.

26. Krucial, as the employer, made promises to pay quarantine for two weeks after deployment. Each plaintiff was stiffed on this pay, though Oanh Lam was paid for her first tour in Texas, then stiffed on the next when Krucial's cash was not as fluid.

27. In many cases, Krucial deemed the employee "approved" for quarantine, then Krucial simply changed its mind and stopped responding to inquiries about such payments. Again, as before, it blamed Texas when, upon information and belief, Texas did not disallow quarantine pay and, in any case, Krucial was the employer hired to bring in nurses by FEMA, not Texas.

28. Under the FMLA, an employer like Krucial *shall* provide to each employee paid sick time to the extent that the employee is unable to work due to a need for leave because:

(a) The plaintiff is subject to a Federal, State, or local quarantine or isolation order related to COVID–19.

(b) The plaintiff was advised by a health care provider to self-quarantine due to concerns related to COVID–19;

(c) The plaintiff cared for an individual who is subject to an order as in ¶ 28 (a);

(d) The plaintiff was caring for a son or daughter, and the school of the son or daughter was closed, or the childcare provider of such son or daughter is unavailable due to COVID–19 precautions; or

(e) The employee is experiencing symptoms of COVID–19 and seeking a medical diagnosis.

29. Each plaintiff falls into one of these four categories. Those in New York, Alaska and California had a state-wide quarantine order in place. The plaintiffs from Florida and Wisconsin had particularized county-wide orders that did not run to the entire state. The remaining – and all plaintiffs – qualify under the provisos of, at a minimum, ¶¶ 28 (b) or 28 (e). Other categories might also apply, but (b) and (e) apply to all.

30. Krucial paid none of these plaintiffs their two weeks of quarantine pay – even those with quarantine orders from their home state (or county), despite the FMLA, and despite Krucial's promises, and applicable local laws. (Upon information and belief, only Oklahoma and Missouri did not require quarantine, though some counties within did. Florida exempted travel nurses – and who knows why since it seems they need quarantine the most – but the other categories still apply under the FMLA.)

31.     There is no independent federal jurisdiction for any pendant claims that these plaintiffs might bring, such as breach of contract or their states Labor Law. Even if there were diversity, the amount in controversy for any such claim for an individual plaintiff would not exceed $75,000, so the diversity rules will (probably) disallow such claim without invoking the FMLA. The entire case therefore relies on FMLA; any state law violation would be redundant and likely futile.

32.     Each plaintiff now sues for redress under the FMLA, and their total losses exceed $300,000, not including costs, interest, or attorneys' fees.

FIRST CAUSE OF ACTION
VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
FAILURE TO PAY QUARANTINE
EMERGENCY PAID SICK LEAVE ACT

33.     Plaintiffs repeat and reallege all prior paragraphs.

34.     Under the FMLA Emergency Paid Sick Leave Act, Krucial was required to give employees paid sick time for an amount of 80 hours for full-time employees. All plaintiffs worked full time for Krucial, as described above.

35.     Each plaintiff made, upon information and belief, $7,600 per week. As such, each is owed $15,120 (the unpaid two weeks) plus liquidated damages of $15,120 since Krucial's violations were wilful.

36.     As a result of the preceding, eleven plaintiffs are owed, in toto, $332,640, plus punitive damages, attorneys' fees and expenses, and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## FMLA INTERFERENCE

37. Plaintiffs repeat and reallege all prior paragraphs.

38. Krucial's failure to pay quarantine on such a systematic basis as alleged interfered with each plaintiff's FMLA rights.

39. First, by failing to post FMLA rights as required, these plaintiffs were not apprised of their rights under the FMLA, nor their right to invoke it, impeding the pay owed to them, as calculated in the first cause of action.

40. Next, the Second Circuit has held that a private right of action may enforce the Department of Labor's FMLA regulations. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158 (2d Cir. 2017).

41. In this case, The FMLA regulations required under Krucial to post FMLA rights in a conspicuous place. Krucial, an unprepared employer, did not post FMLA guidelines in any work location.

42. Failing to apprise employees of their FMLA rights by posting regulations is FMLA Interference. Not letting the nurses know of their rights, as required, deters their ability to negotiate the payment on their own, or hire counsel since the FMLA provides for liquidated damages and attorneys' fees.

43. So, in addition to the amounts set forth in Count I, plaintiffs are entitled to additional damages, including but not limited to such penalties that the FMLA

allows for a failure to post regulations – currently $173 per violation, per day, per plaintiff. The total damages for the penalties come to roughly $79.926.

WHEREFORE, Plaintiffs demand the following relief:

a) Compensatory and liquidated damages no less than $412,566.

b) Punitive damages to the extent allowed by law in an amount to be determined by the trier of fact.[3]

c) Such damages for FMLA interference in addition to the penalty and as determined by the trier of fact.

d) Attorneys' fees.

e) An order that Krucial post notices of the protections of the FMLA.

f) Such other relief as the Court may deem appropriate.

Dated: New York, New York
February 5, 2021

*Greg S. Antollino*

Gregory Antollino, Esq.
275 Seventh Avenue, Seventh Floor
New York, New York 10001
(212) 334-7397
gregory@antollino.com

---

[3] The Second Circuit has not ruled whether punitive damages are allowed under the FMLA. Some district Courts in New York have ruled they are not allowed. However, in addition to the Circuit's not having ruled on this issue, there is also a Circuit split nationwide.



EXHIBIT B
Case 1:21-cv-01071 Document 1 Filed 02/05/21 Page 16 of 16

5:05

June 3
10:06 AM

All Photos

On Apr 13, 2020, at 12:38 PM, Payroll <payroll@krucialstaffing.com> wrote:



Yes, you will received 80 hours of base pay for quarantine. When you demobilize, please send us your demobilization date and the date of the last shift you worked.

Thanks!

**From:** Novella Coleman-Unifoh <nocolemanrme-icloud.com>
**Sent:** Monday, April 13, 2020 9:09 AM
To: Payroll <payroll@krucialstaffing.com>
Subject: NOLA Quarantine Pay

Good morning,

I am currently on deployment in New Orleans, LA and I am approaching my 21 days here! In the event I choose to return home after the completion of my 21 days, will I be compensated for

